UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEON LEE MEYERS,

            Plaintiff,

   v.

SCOTT KERNAN, et al.,

            Defendants.

Case No. 21-cv-08874-EMC

**ORDER OF DISMISSAL IN PART, AND ORDER OF TRANSFER**

## I.      **INTRODUCTION**

Leon Lee Meyers, a prisoner formerly incarcerated at Salinas Valley State Prison ("SVSP") and currently incarcerated at Wasco State Prison ("Wasco"), filed this *pro se* civil rights action under 42 U.S.C. § 1983.  *See* Docket No. 1 ("Complaint").  His Complaint is now before the Court for review under 28 U.S.C. § 1915A.  Mr. Meyers has paid the filing fee for this action. *See* Docket No. 3.

## II.      **BACKGROUND**

Mr. Meyers is currently incarcerated for "assault on a police officer resulting in great bodily injury . . . battery on a person with whom [Mr. Meyers] had a dating relationship . . . and resisting a police officer resulting in serious bodily injury . . . ."  *Meyers v. Hedgpeth*, No. C-11-5327 TEH (PR), 2015 WL 1467819, at *1 (N.D. Cal. Mar. 31, 2015) (citations omitted).  He was convicted of these charges in October 2009, *see id.*, and has been continuously incarcerated since January 2010, *see* Cal. Dep't of Corr. & Rehab., Inmate Locator, https://inmatelocator.cdcr.ca.gov/

(results for "Leon Meyers") (last visited March 27, 2022).[1]  Prior to his current period of incarceration, Mr. Meyers was incarcerated three times on convictions related to controlled substances, *see* Alameda Cty. Super. Ct. Case Nos. H33183 (filed Jan. 8, 2003), 134389A (filed Dec. 7, 1998), 407502 (filed Feb. 21, 1996); and charged with continuous sexual abuse of a child, *see* Alameda Cty. Super. Ct. Case No. 355743 (filed Nov. 1, 1991) (not stating whether this charge resulted in conviction or acquittal).[2]

In 2020, in response to the COVID-19 pandemic, the California Department of Corrections and Rehabilitation ("CDCR") adopted certain programs to consider early release for some prisoners.  *See* Compl., Ex. B at 25[3] (document from the Prison Law Office, summarizing CDCR's programs).  Mr. Meyers argues that he was wrongfully denied release under the "early medical release" program, and that this denial resulted from discrimination on some unspecified ground.  *See* Compl. at 4 (arguing that plaintiff should have been granted release under one of these programs).  Mr. Meyers also believes he should have been released under CDCR's Elderly Parole Program, and Proposition 57.  *See id.* at 4-5.  Mr. Meyers argues that the failure to release him under any of these programs violated his Fourteenth Amendment right to equal protection. *See id.*

Mr. Meyers also contends that he was retaliated against in violation of the First Amendment.  *See id.* at 6.  He alleges that he assisted other inmates in filing grievances and lawsuits, and that between January 29, 2021, and April 22, 2021, correctional officers conducted

---

[1] It is proper for the Court to take judicial notice of these records.  *See United States v. Lucas*, 841 F.3d 796, 802 (9th Cir. 2016) (taking judicial notice of the publicly available information from the inmate locator for the Federal Bureau of Prisons); *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (same).

[2] The Court takes notice of the Alameda County Superior Court's docket.  Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).  Court orders and other court documents are proper subjects of judicial notice, *see id.*, as are records of court proceedings, *see Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).  A court "may take judicial notice on its own" or after a party requests that it do so.  Fed. R. Evid. 201(c).

[3] Because Mr. Meyers's page numbering is somewhat inconsistent, the Court will use the page numbers applied by the CM/ECF system.

1    numerous cell searches in retaliation for his providing this assistance.  *See id*. at 6-7.

2            On April 22, 2021, Mr. Meyers was transferred from SVSP to Wasco.  *See id*. at 7.   He

3    contends that officers purposely transferred him to a general population yard in an effort to put his

4    safety at risk.  *See id*. at 10.  Mr. Meyers explains that prisoners on a general population yard "will

5    normally ask for your 'paperwork.'"  *Id*.  Mr. Meyers's paperwork classifies him as a violent sex

6    offender, which Mr. Meyers contends is erroneous and is itself an attempt to get him attacked, and

7    he contends that general population prisoners will attack him based on that classification.  *See id*.

8    Mr. Meyers argues that "[t]he only safe yard for [him] is a Non[] Designated yard (NDPF)."  *Id*.

9            Following his transfer, Mr. Meyers contends that officers at Wasco purposely misplaced

10   some of his property during the transfer, in retaliation for the grievances Mr. Meyers had filed.

11   *See id*. (stating that the property was lost "between the transfer and the time they gave [him his]

12   property here at Wasco Prison").  Mr. Meyers claims that Wasco employees denied Mr. Meyers's

13   request(s) for ADA accommodations, obstructed his ability to use the law library, searched his cell

14   "about 30-40 times" and searched the cells of inmates that he was assisting, and seized and/or

15   damaged some of Mr. Meyers's property.  *See id*. at 7, 8, 12-14, 17-18, 20.  Mr. Meyers contends

16   that the Wasco officers' cell searches, and the denial of his requested ADA accommodations, put

17   him at risk of being exposed to the COVID-19 virus.  *See id*. at 16.  Mr. Meyers believes he is at

18   greater risk from the virus than the average inmate because he is over 60, has several chronic

19   health conditions, and refuses to be vaccinated.  *See id*. at 7 ("I never had a vaccination and don['t

20   want, one.  As mentioned supra, if I catch Covid, I would more than likely die from it.").

21                                   **III.   DISCUSSION**

22           Mr. Meyers has attempted to state a Fourteenth Amendment claim based on events that

23   occurred at SVSP, and First and Eighth Amendment claims based on events that occurred at SVSP

24   and Wasco.  For the reasons stated below, Mr. Meyers's SVSP-based claims fail, and are

25   dismissed without leave to amend.  Mr. Meyers's Wasco-based claims are transferred to the

26   United States District Court for the Eastern District of California.

27   A.    Legal Standard

28           A federal court must engage in a preliminary screening of any case in which a prisoner

                                              3

United States District Court
Northern District of California

1   seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28

2   U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any

3   claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or

4   seek monetary relief from a defendant who is immune from such relief.  *See id.* at

5   § 1915A(b)(1),(2).  *Pro se* pleadings must be liberally construed.  *See Balistreri v. Pacifica Police*

6   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In screening a prisoner's allegations, a court may

7   consider the "complaint and attachments thereto," and matters subject to judicial notice.  *Kiper v.*

8   *Nevada State Prison Offs.*, 332 F. App'x 436, 437 (9th Cir. 2009) (discussing district court's

9   screening of allegations based on complaint and exhibits), *see also Williams v. Paramo*, 830 F.

10  App'x 981, 982 (9th Cir. 2020) (district court's dismissal at screening, which "took judicial notice

11  of multiple actions" plaintiff had filed on previous occasions, was proper).

12        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a

13  right secured by the Constitution or laws of the United States was violated and (2) that the

14  violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487

15  U.S. 42, 48 (1988).

16  B.     Analysis

17        1.     SVSP-Based Fourteenth Amendment Claim

18        Mr. Meyers contends that prison officials violated his right to equal protection when they

19  denied his request for release under the now-terminated program granting early release to persons

20  with certain medical conditions, and when they failed to release him under the Elderly Parole

21  Program or proceedings conducted pursuant to Proposition 57.

22        A prisoner alleging he was denied equal protection under 42 U.S.C. § 1983 based on a

23  suspect classification must plead intentional unlawful discrimination or allege that the defendant

24  acted at least in part because of plaintiff's membership in a protected class.  *See Furnace v.*

25  *Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*,

26  629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (claim that alleged harmful treatment but

27  mentioned nothing about disparate treatment was properly dismissed).  A prisoner might also state

28  a "class of one" claim by demonstrating that the state actor (1) intentionally (2) treated him

4

differently than other similarly situated persons, (3) without a rational basis.  *Gerhart v. Lake County Montana*, 637 F.3d 1013, 1021-22 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  The intent element does not require that the government actors acted with "subjective ill will" towards the plaintiff, merely that they intended to treat the plaintiff differently.  *Gerhart*, 637 F.3d at 1022 (citing *Willowbrook*, 528 U.S. at 565).

To the extent Mr. Meyers argues that he should have been granted early release pursuant to Proposition 57, *see* Compl. at 5, this claim fails as a matter of law.  California's Proposition 57, approved by voters in November 2016, makes parole more available for certain felons convicted of nonviolent crimes.  Specifically, Proposition 57 added Article I, section 32 to the California Constitution.  That section provides, in relevant part, "Parole consideration: Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term of his or her primary offense," defined for these purposes as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence."  Cal. Const., art. I, § 32(a)(1).  M. Meyers is not a "nonviolent" offender, because he was convicted of battery, assault, and causing great bodily injury.  *See supra*, II.  As such, he is not entitled to an early parole hearing under the plain language of California Proposition 57, which only gives early parole hearings to "nonviolent" offenders.  Therefore, even if there were an equal protection right to an early parole hearing under Proposition 57, such a right would only extend to those eligible to such hearings under the terms of that statute.  Mr. Meyers is not eligible to such a hearing due to the violent nature of his offenses, and the denial of such a hearing did not violate his federal constitutional rights.

To the extent Mr. Meyers argues that he should have been granted early release under the Early Parole Program, *see* Compl. at 4, this claim fails as a matter of law.  To be eligible for consideration for release under the Early Parole Program, a prisoner must be "50 years of age or older and ha[ve] served *a minimum of 20 years* of continuous incarceration on the inmate's current

sentence." Cal. Penal Code. § 3055(a) (emphasis added) (eff. Jan. 1, 2021).[4] As noted above, *supra* II, to date Mr. Meyers has served twelve years on his current sentence. Because twelve is less than twenty, Mr. Meyers is not eligible for release under this program, regardless of any membership in a protected class. The failure to grant Mr. Meyers early release under this program thus does not treat him differently from similarly situated prisoners.

As to the medical release program, Mr. Meyers has failed to identify any suspect class in which he is a member, and has failed to allege that Defendants treated him differently from other similarly situated prisoners. Moreover, the exhibits that Mr. Meyers attached to his Complaint reveal that Defendants did not violate his right to equal protection when they denied him early release. One of Mr. Meyers's exhibits stated that, in theory, "6,599 people were eligible for early release," but CDCR "only considered 1,335 for release," and only granted release to 57. Compl., Ex. B at 24. Even if the Court assumes that Mr. Meyers was eligible for release under this program, *see* Compl. at 4 (arguing his eligibility), Defendants treated him, at least statistically, the same as the other 99.14% of prisoners who were eligible but not granted early release. Mr. Meyers has not demonstrated he was treated differently from other similarly situated prisoners.

Because Mr. Meyers has not identified any ground on which he was denied equal protection, and because his allegations and judicially noticeable records reveal that he cannot identify such a ground, his Fourteenth Amendment claim is **DISMISSED** without leave to amend.

2.    <u>SVSP-Based First Amendment Claims</u>

Mr. Meyers contends that prison officials retaliated against him when they searched his cell as SVSP, *see* Compl. at 6-7, and when they decided to transfer him to a general population yard at Wasco, *see id*. at 7, 10. Mr. Meyers also appears to argue that he was administratively classified as a "vio[lent] sex offender," as an act of retaliation. *Id*. at 10.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

---

[4] Prior to January 1, 2021, prisoners who were 65 years of age and had served 20 years of their sentence were eligible for consideration for early parole.

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains."  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

This claim fails because the adverse action occurred before the Defendant became aware of Mr. Meyers's protected conduct.  Mr. Meyers contends that, at SVSP on January 29, 2021, Officer Mendez conducted cell searches in retaliation for Mr. Meyers having assisted Inmate Grant in filing a lawsuit against Officer Mendez.  *See* Compl. at 6, 21 (identifying the case that Mr. Meyers helped Inmate Grant to file).  However, court records indicate that Officer Mendez was not served with Inmate Grant's complaint until March 3, 2021.  *See* Docket No. 15 at 4, *Grant v. Haro*, Case No. 3:20-cv-06562-WHA (N.D. Cal.).  Because Officer Mendez had not even been served with Inmate Grant's complaint at the time of the cell searches, Mr. Meyers's provision of assistance to Inmate Grant cannot have been the motivating factor for those cell searches absent an affirmative allegation that Officer Mendez knew of such assistance in advance of the search.  *See, e.g., Pratt*, 65 F.3d at 808 (rejecting theory that defendants acted in retaliation for inmate's interview with news channel, where the interview did not occur until three days after defendants' actions, and the interview was not broadcast until one month later).

Moreover, where guards searched all cells and not just the plaintiff's, the Ninth Circuit has held that this suggests the search "serve[d] a legitimate penological purpose," and was not retaliatory.  *Swan v. Smith*, 50 F. App'x 362 (9th Cir. 2002) (affirming grant of summary judgment in favor of defendants, where "prison officials searched *all* the prisoners's [sic] cells following an attack on a guard," because the fact that all the cells had been searched suggested the search was not because of the plaintiff's protected conduct) (emphasis in original); *see also Green v. Elias*, 9 F.3d 1551 (9th Cir. 1993) (unpublished) (where all prisoners were subjected to pat-down search upon leaving dining hall, this suggested the search was conducted for the legitimate penological goal of preventing the smuggling of contraband, rather than motivated by protected conduct).  Here,  Mr. Meyers alleges that the "entire bldg." was searched over the course of two days.  *See* Compl. at 6 ("They searched the whole bottom tier, and then on the next day, they searched the

top!").  The fact that Officer Mendez searched every cell, and not just Mr. Meyers's cell, further suggests that the cell searches were not "because of" Inmate Grant's lawsuit.  *Cf. Swan v. Smith*, 50 F. App'x 362 (9th Cir. 2002).

Mr. Meyers also alleges that he was transferred to Wasco in retaliation for having helped Inmate Grant.[5]  *See* Compl. at 7, 10.  However, the exhibits attached to the Complaint show that Mr. Meyers's transfer to Wasco was ordered on January 26, 2021.  *See* Compl., Ex. D at 27.  The transfer decision thus was made four days before Mr. Meyers's cell was searched, and five weeks before Officer Mendez was served with Inmate Grant's lawsuit.  As above, Mr. Meyers's assistance to Inmate Grant thus could not have motivated the decision to transfer Mr. Meyers to Wasco.

Likewise, although Mr. Meyers appears to argue that he was administratively classified as a violent sex offender in retaliation for the assistance he provided to Inmate Grant, *see* Compl. at 10, this classification appeared in Mr. Meyers's record on or before January 26, 2021, see Compl., Ex D at 27.  Mr. Meyers's administrative classification thus could not have been motivated by the assistance he provided to Inmate Grant.

Because it is impossible for Mr. Meyers's assistance to Inmate Grant to have motivated conduct which occurred before Defendants became aware of that assistance, Mr. Meyers's retaliation claim is **DISMISSED**.

Leave to amend will not be given, because amendment would be futile.  Where "[i]t would not be possible" for a plaintiff to state a claim on amendment "without contradicting any of the allegations of his original complaint," courts regularly find that amendment would be futile.  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (holding that district court did not abuse discretion by denying leave to amend, where complaint could not truthfully be amended to state a claim); *see also Robinson v. WMC Mortg. Corp.*, 649 F. App'x 636, 637 (9th Cir. 2016) (same); *Heisen v. Pac. Coast Bldg. Prod., Inc.*, 26 F.3d 130 (9th Cir. 1994) (unpublished) (same).  Here, Mr. Meyers cannot truthfully amend the Complaint to show that his assistance to Inmate

---

[5] Mr. Meyers does not allege, much less provide facts showing, that Officer Mendez had the power to have Mr. Meyers transferred.

United States District Court
Northern District of California

Grant motivated Defendants' conduct, because the record shows that Defendants acted before becoming aware of that assistance. Accordingly, Mr. Meyers's First Amendment claim is dismissed without leave to amend.

### 3.    SVSP-Based Eighth Amendment Claim

Mr. Meyers appears to argue that Defendants put his safety at risk by administratively classifying him as a violent sex offender, and by transferring him to Wasco. *See* Compl. at 10 (stating that Defendants incorrectly classified Mr. Meyers as a violent sex offender, and that this classification would get him attacked), 21 (arguing that Wasco "by its nature, would be a threat to [Mr. Meyers's] health and safety"). Mr. Meyers argues that he should be housed at a Non-Designated Program Facility, rather than with general population inmates. *See id*. at 10-11.

#### a.    Administrative Classification

Mr. Meyers appears to intend to claim that his erroneous administrative classification as a violent sex offender violates the Eighth Amendment. *See* Compl. at 10. This claim fails because, first, this classification does not appear to be erroneous. Second, even if it were erroneous, it is well established that misclassification does not constitute an Eighth Amendment claim.

Mr. Meyers contends that he received an inaccurate administrative classification of "VIO. SEX. LIF. ESC." Compl. at 10 (arguing plaintiff is not a sex offender); *see also* Compl., Ex. D at 28 (providing administrative determinant). CDCR regulations provide that inmates who "meet[] . . . irregular placement conditions . . . may be housed in a facility with a security level which is not consistent with the inmate's placement score," and that certain "three-letter codes . . . indicate those administrative or irregular placement conditions." Cal. Code Regs. tit. 15, § 3375.2(a), (b). The administrative determinants applied to Mr. Meyers indicate that he has a current or prior conviction for a violent felony; "a prior *incidence* of rape, oral copulation, sodomy, or a lewd and lascivious act"; is serving a life sentence; and poses a high escape risk. *Id.* at § 3375.2(b)(28), (23) (emphasis added), (12), (9). As noted above, Mr. Meyers currently is incarcerated for an assault resulting in great bodily injury and for domestic violence, and in 1991 was arrested and charged with the continuous sexual abuse of a child. *Supra* II.

First, Mr. Meyers's administrative classifications appear to be correct. The Ninth Circuit

United States District Court
Northern District of California

1  previously has rejected arguments that an inmate was misclassified as a sex offender where the

2  inmate was arrested for, though never convicted of, a sex offense.  In *Garcia v. Henry*, an inmate

3  challenged the application of an "R suffix" to his prison record, because he had never been

4  convicted of rape.  *See* 13 F. App'x 579, 580 (9th Cir. 2001).  The Ninth Circuit noted that the

5  relevant CDCR regulation did not require an inmate to have been convicted of rape before an "R"

6  suffix could be applied; rather, the regulation required the application of that suffix whenever an

7  inmate had been arrested and charged with rape.  *See id.* at 580-81.  Because the defendants had

8  followed that rule, the plaintiff's constitutional rights had not been violated.  Likewise, in *DeLong*

9  *v. Terhune*, the Ninth Circuit held that an "R" suffix was "justified . . . because of [the plaintiff's]

10  prior *arrest* for rape," and thus that no constitutional violation had occurred.  18 F. App'x 534, 535

11  (9th Cir. 2001) (emphasis added).  Applying *Garcia* and *DeLong* here, Mr. Meyers's 1991 arrest

12  for sexual abuse of a child justifies the "SEX" determinant.  The relevant regulation does not

13  require that an inmate be convicted in order to receive this determinant  Instead, there must merely

14  be an applicable "inciden[t]" in the inmate's past, Cal. Code Regs. tit. 15, § 3375.2(b)(23), which

15  requirement is met by Mr. Meyers's arrest, *see Garcia*, 13 F. App'x at 580; *see also DeLong*, 18

16  F. App'x at 535.  The "SEX" determinant is thus justified by Mr. Meyers's 1991 arrest, and Mr.

17  Meyers's current violent conviction obviously justifies the "VIO" determinant.  The application of

18  "VIO" and "SEX" to Mr. Meyers therefore is not erroneous under California law.

19       Even if the application of these determinants were incorrect, the Ninth Circuit repeatedly

20  has rejected claims that classification programs violate the Eighth Amendment.  *See Neal v.*

21  *Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997) (classification program designed to treat and reduce

22  recidivism of sex offenders is well within state's authority to operate correctional facilities and

23  does not violate contemporary standards of decency).  Even where an inmate is arguably

24  misclassified, this "does not itself inflict pain within the meaning of the Eighth Amendment," and

25  so does not constitute an Eighth Amendment violation.  *Hoptowit v. Ray*, 682 F.2d 1237, 1255-56

26  (9th Cir. 1982) (reversing district court's order granting injunctive relief).[6]

27

28  ---
[6] *See also Johnson v. Robinson*, 692 F. App'x 371, 372–73 (9th Cir. 2017) ("The district court
properly dismissed [plaintiff's] Eighth Amendment claims . . .  because [plaintiff] failed to allege

1   Because Mr. Meyers's Eighth Amendment claim fails first because the facts show that the

2   classifications are correct, and second because misclassifications as a matter of law do not violate

3   the Eighth Amendment, it is **DISMISSED** without leave to amend.

b.   Transfer from SVSP to Wasco

5   Mr. Meyers contends that his transfer from SVSP to general population housing at Wasco

6   puts his safety at risk, because he can be safely housed only at an NDPF facility. *See* Compl. at 7.

7   This claim fails because it is logically baseless.

8   Mr. Meyers claims that he must be housed at an NDPF facility because general population

9   inmates will demand to see his "paperwork," will discover his administrative classification, and

10   will attack him because of it. *See id.* However, an NDPF yard is one where "Level I and Level II

11   GP and SNY inmates are housed together." *Kester v. Diaz*, No. 19-CV-04205-JST, 2019 WL

12   3997483, at *2 (N.D. Cal. Aug. 23, 2019). This means that Mr. Meyers would still be housed with

13   general population inmates if he were placed in an NDPF facility. *See id.* (plaintiff claimed that a

14   sensitive needs prisoner would be at risk in an NDPF facility because he would be housed with

15   general population inmates who would attack him). Thus, Mr. Meyers's claim that he cannot be

16   safe in a general population facility, but would be safe in an NDPF facility, makes no sense

17   because he would be housed with general population inmates in either situation.

18   Moreover, although Mr. Meyers suggests that he was transferred to a general population

19   facility at Wasco in an intentional effort to put his safety at risk, *see* Compl. at 10, 21 ("CCI

20   Lizaola . . . had plaintiff sent to a prison in which by its nature, would be a threat to his health and

21   safety."), Mr. Meyers's exhibits show that he was housed in general population at SVSP prior to

22

23   _____

24   facts sufficient to show that he suffered any injury other than the classification itself."); *Sims v. Woodford*, 430 F. App'x 637 (9th Cir. 2011) (same, at summary judgment); *Terry v. Salinas Valley State Prison*, 243 F.3d 550 (9th Cir. 2000) (affirming dismissal because "misclassification, and a resulting placement in an area of higher security does not inflict pain within the meaning of the Eighth Amendment, and cannot form the basis of a constitutional claim"; *Bayramoglu v. Cate*, No. C 13-1094 YGR (PR), 2013 WL 5934702, at *3 (N.D. Cal. Oct. 30, 2013) (classification of prisoner did not state an Eighth Amendment claim, even though prisoner was placed in solitary confinement because of classification) (citing *Hoptowit*, 682 F.2d at 1255-56); *Goodlow v. Tucker*, No. C 09-5786 CRB (PR), 2010 WL 1541669, at *1 (N.D. Cal. Apr. 16, 2010) (allegation that prisoner was misclassified and placed in "close custody" as a result of misclassification was insufficient to state an Eighth Amendment claim) (citing *Hoptowit*, 682 F.2d at 1255-56).

United States District Court
Northern District of California

this transfer, *see* Compl., Ex. D at 27-30.  Mr. Meyers's classification committee chronos show

that he was a Level III inmate in 2019 and 2020, and maintained that level in 2021.  *See id.* at 29

(stating he had a placement score of 47 in 2019, which increased to 49 in 2020), 27 (stating that

his placement score fell to 41 in 2021); *see also* Cal. Code Regs. tit. 15, § 3375.1(a)(3) ("An

inmate with a placement score of 36 through 59 shall be placed in a Level III facility.").  Only

some Level I and Level II facilities have transitioned to NDPF facilities.  *See* CDCR,

Non-Designated Programming Facility Frequently Asked Questions,

https://www.cdcr.ca.gov/blog/non-designated-programming-facility-frequently-asked-questions-

faq/ (last visited March 27, 2022).[7]  Thus, as Mr. Meyers was a Level III inmate when he was

housed at SVSP, he cannot have been housed in NDPF at SVSP.  Mr. Meyers's argument that he

was transferred to Wasco in order to get him placed on a general population facility makes no

sense because Defendants could have achieved the same ends by keeping Mr. Meyers at SVSP.

Because the Complaint reveals that Mr. Meyers's SVSP-based Eighth Amendment claims

are meritless, these claims are **DISMISSED** without leave to amend.

## IV.    ORDER OF TRANSFER

The above analysis disposes of all claims Mr. Meyers filed concerning events at SVSP.

Mr. Meyers's remaining claims concern events at Wasco.  *See generally*, Compl.  In addition, Mr.

Meyers recently filed a motion for a preliminary injunction, asking that officials at Wasco be

required to grant him single-cell housing.  *See* Docket No. 5.

Venue is proper where defendants reside, or where the events at issue occurred.  *See* 28

U.S.C. § 1391(b).  Wasco lies in Kern County, which is in the Eastern District of California.

---

[7] *See also Andrade v. Diaz*, No. 5:20-CV-00137-FMO-JC, 2020 WL 8454918, at *6 (C.D. Cal. Nov. 19, 2020) ("the NDPFs involved only certain categories of inmates from general population who posed a low risk of violence . . . the NDPFs were implemented only in Level I and Level II housing facilities"), *report and recommendation adopted,* No. 5:20-CV-00137-FMO-JC, 2021 WL 1191993 (C.D. Cal. Jan. 27, 2021); *Mendez v. Diaz*, No. 119CV01759NONEBAMPC, 2020 WL 1974231, at *4 (E.D. Cal. Apr. 24, 2020) ("Plaintiff alleges that Defendants Diaz, Allison, and Ndoh, who are supervisory officials, are liable in their individual capacities for violating his Eighth Amendment rights by implementing a policy that merges SNY prisoners with GP prisoners in all level 1 and level 2 yards . . . .") *report and recommendation adopted,* No. 119CV01759NONEBAMPC, 2020 WL 2731993 (E.D. Cal. May 26, 2020); *Kester*, 2019 WL 3997483, at *2 ("Level I and Level II yards converted to Non-Designated Programming Facilities ('NDPF'), which means that Level I and Level II GP and SNY inmates are housed together.").

United States District Court
Northern District of California

Venue as to Mr. Meyers's remaining claims, and his request for injunctive relief, therefore would be proper in the Eastern District, and not in this one.

Accordingly, in the interest of justice and pursuant to 28 U.S.C. § 1406(a), this action is **TRANSFERRED** to the United States District Court for the Eastern District of California.

The Clerk shall transfer this matter.

**IT IS SO ORDERED**.

Dated: May 2, 2022

_____
EDWARD M. CHEN
United States District Judge